UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 06-22273-CIV-HIGHSMITH

LAWRENCE KATT, M.D., individually, and on
behalf of all others similarly situated,

    Plaintiffs,

v.

STERLING GROUP PHYSICIAN SERVICES, LLC
d/b/a STERLING HEALTHCARE,

    Defendant.
_____/

ORDER DENYING MOTION TO DISMISS

THIS CAUSE comes before the Court upon Defendant Sterling Group Physician Services, LLC's ("Sterling") motion to dismiss or, in the alternative, change venue [DE 13]. THE COURT has considered the motion, pertinent authorities and the record. For the reason explained herein, it is hereby ORDERED AND ADJUDGED that Defendant's motion is DENIED.

Facts

Dr. Katt was employed by PhyAmerica Physicians Services Inc. ("PhyAmerica"). (Second Am. Class Action Compl. ¶ 4 [hereinafter Second Am. Compl.].) PhyAmerica is a company that arranges for "the provision of professional medical services through contracted physicians, such as Dr. Katt, who would provide such services on the premises of various hospitals and other medical or clinical facilities." (Id.) Part of Dr. Katt's employment agreement with PhyAmerica

was that PhyAmerica would provide malpractice insurance for Dr. Katt. (Id. ¶ 5.) PhyAmerica purchased two separate policies (Everest and AISLIC) for two different claims periods. (Id. ¶ 6.)

The Everest policy covered a claims period starting January 1, 2002, and ending on April 1, 2003. (Aff. of Sarah B. Kvale in Supp. of Def.'s Mot. to Dismiss, ¶ 8 [hereinafter Kvale Aff.].) The AISLIC policy covered a claims period starting on April 1, 2003, and ending on April 1, 2004. (Id.) Both policies are claims made policies, which means that claims must be made during the covered periods in order to be covered by the policy. (Id. ¶ 10.)

In 2002, Dr. Katt was sued for medical malpractice. (Second Am. Compl. ¶ 12.) Dr. Katt found a defense pursuant to terms of the Everest policy and his employment agreement with PhyAmerica. (Id.) In 2003, however, PhyAmerica filed a Chapter 11 bankruptcy action in which it "continued to operate its business and manage its property as a debtor in possession . . . until assets were sold." (Id. ¶ 7.) The two insurance companies from which PhyAmerica had purchased the insurance policies filed for bankruptcy as well. (Id. ¶ 14.)

As a result of the insurance companies bankruptcies, the Bankruptcy Court, on June 30, 2003, set an Alternative Dispute Resolution Order ("ADR") that established procedures for processing Motions for Relief from Automatic Stay filed by medical malpractice claimants and other ADR procedures. (Def.'s Mot. to Dismiss Second Am. Compl. for Lack of Subject Matter Jurisdiction, and, in the Alt., to Change Venue, And Inc. Mem. of Law 5[herinafter Def.'s Mot.].) On November 11, 2003, Sterling bought PhyAmerica's assets and, as part of the purchase price, assumed PhyAmerica's medical malpractice liabilities. (Id.) Some of the malpractice liabilities

were covered by Everest and AISLIC , so the court allowed Sterling to administer the ADR process pursuant to its June 30th Order. (Id.) Sterling also agreed to fund a medical malpractice liability insurance. (Pl.'s Resp. to Def.'s Mot. to Dismiss Second Am. Compl. for Lack of Subject Matter Jurisdiction, and, in the Alt., to Change Venue 3 [hereinafter Pl.'s Resp.].)

On December 17, 2003, the Bankruptcy Court issued a Confirmation Order, which approved the sale of substantially all of the PhyAmerica's assets to an affiliate of Sterling. (Def.'s Mot. 3-4.)  In this order, the Bankruptcy Court also retained jurisdiction over certain matters. (Id.) The Everest and AISLIC policies, however, were underfunded by the Debtors. So, in December 2004, Sterling initiated an action in the Bankruptcy Court to deal with the underfunded policies. (Id. at 5.) On April 28, 2005, the Bankruptcy Court ruled on Sterling's complaint and issued a Memorandum Opinion Clarifying and Interpreting Confirmation Documents and an Order Adopting Clarifying Procedures for the Malpractice Claims Against the Debtor's Insurance Policies ("Clarifying Order"). (Id. at 6.)

The Clarifying Order specifically stated that Sterling agreed to assume all of PhyAmerica's "'medical malpractice liabilities of Sellers' contracted and employed physicians and other clinical providers who provide medical services in connection with the acquired assets . . . [for] acts, events and omissions occurring prior to the petition date' and from after the petition date through the Closing Date' of the Asset Purchase Agreement." (Mem. Op. Clarifying and Interpreting Confirmation Docs. 5 [hereinafter Clarifying Order].) "[T]he Clarifying Order permit[ted] the payment of defense costs from the limited amount [of insurance funds] allocated

to the respective malpractice claim. (Def.'s Mot. 6.)

The order also enjoined all holders of malpractice claims from seeking to collect against the personal assets of any physician who was employed or contracted by Debtor. (Id.) However, the Order provided that a holder of a malpractice claim may be protected from the injunction if the holder were to petition the Bankruptcy Court. (Clarifying Order 4.) Although the Bankruptcy Court, in the order, retained jurisdiction over the terms of the Order, the Clarifying Procedures and the ADR and the Policies, the order dealt with the distribution of insurance funds. (See Id. at 2-6.) The Clarifying Order, specifically states that

> nothing contained in this Order or the Clarifying Procedures shall affect, resolve or have any preclusive effect whatsoever upon any other disputes, including without limitation any funding obligation for medical malpractice claims or otherwise which Sterling allegedly may have, any alleged liabilities of Sterling, whether Sterling has acted properly in choosing to administer claims against any of the Policies as opposed to another policy, or otherwise, and all of the parties' rights (including Sterling's rights) to such matters are fully reserved. (Id. 5.)

Dr. Katt has now initiated a class action law suit, for breach of contract, against Sterling. (Second Am. Compl. 5-9.) Dr. Katt claims Sterling is obligated to indemnify, defend or reimburse said class members for the defense costs upon the exhaustion of the otherwise available limits of the AISLIC and Everest policies. (Id.) Dr. Katt alleges that there are 100 available class members. (Pl.'s Resp. 5.)

In seeking to dismiss for lack of subject matter jurisdiction, Sterling asserts a factual challenge to the number of class members available for this class action suit. In the alternative, Sterling contends that the Bankruptcy Court's issuance of several Orders dictating the sales

terms, claim management and liabilities of Sterling in acquiring PhyAmerica assets in a bankruptcy proceeding are sufficient to confer jurisdiction on the Bankruptcy Court so that a transfer of venue to the Bankruptcy Court would be proper.

## Discussion

A. <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

A court has subject matter jurisdiction over a class action law suit if the class, among other requirements, has 100 or more members. 28 U.S.C. § 1332(d)(5)(b) (2006). When a motion to dismiss raises a factual attack on a court's jurisdiction (i.e. on the very fact providing for jurisdiction), then the presumption that the allegations in the Complaint are true does not apply, and the district court is allowed to consider facts as it sees fit. <u>Barnett</u>, 283 F.3d at 1237-38. If the facts necessary to sustain jurisdiction do not implicate the merits of the case, the court is free to weigh evidence to satisfy itself as to the existence of its power to hear the case. <u>Garcia v. Copenhaver, Bell & Assocs.</u>, 104 F.3d 1256, 1261 (11th Cir. 1997). "[F]ederal courts have power to order, at their discretion, discovery of facts necessary to ascertain their competency to entertain the merits." <u>Eaton v. Dorchester Dev. Inc.</u>, 692 F.2d 727, 729 (11th Cir. 1982) (citing <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 n.13 (1978)).

Here, Sterling claims that there are only 51 unresolved claims and suits pending that were covered by the Everest and AISLIC. (Def.'s Mot. 8.) Out of those 51 unresolved claims and suits 59 insureds have been named as defendants or potential Defendants. (<u>Id.</u>) The Everest policy covered a claims period starting January 1, 2002 and ending on April 1, 2003. (Kvale Aff.

¶ 8.)  The AISLIC policy covered a claims period starting on April 1, 2003 and ending on April 1, 2004.  (Id. ¶ 8.)  Both policies are claims made policies. (Id. ¶ 10.)  A claims made policy is a policy in which claims must be made during the covered periods in order to be covered by the policy.  (Id.) Therefore, Sterling argues, the number of class members is determinable and there are a maximum number of 59 potential class members.  (Def.'s Mot. 9.)  In alleging that there are less than 100 available class members, Sterling  makes a factual challenge to the court's jurisdiction.  See Barnett, 283 F.3d at 1237-38.

The question of how many class members are available, does not go to proving the merits of the case[1].  The case is a breach of contract case.  Dr. Katt is claiming that Sterling, as the assignee of the employment agreement that Dr. Katt and others similarly situated held with PhyAmerica, breached the agreement between them. (Second Am. Compl.¶ 26-7.) Because the number of existing class members does not determine any part of the claim for breach of contract, the court is free to weigh the evidence to satisfy itself as to the existence of its power to hear the case.  Garcia, 104 F.3d at 1261.

Dr. Katt contends that the number of members of the proposed class is in excess of 100.

---

[1]The Bankruptcy Court's Clarifying Order of April 28, 2005 enjoins all holders of medical malpractice claims from seeking to collect upon *any* judgment or settlement against the personal assets of any covered physician. (Def.'s Mot. 6.)  Therefore, Sterling argues, the physicians who settled fast or previously lost the case are protected by this order. (Def.'s Reply 4.)  This might affect the breach of contract claim in that if there are no damages, the suit might be null.  See Block v. West Palm Beach, 112 F.2d 949, 952 (11th Cir. 1940) (stating that ". . .the mere breach of an agreement which causes no loss to the plaintiff will not sustain a suit by him for damages . . ."). However, if the damages are insufficient, the challenge can be considered a challenge for  lack of subject matter jurisdiction.  See 28 U.S.C. § 1332 (requiring that the controversy of a class action in federal court be over $5 million dollars).  Even so, this argument has little merit because the holders of malpractice claims can petition the court to not be bound by the injunction, which would allow recovery from these doctors.  (See Clarifying Order 4.)

(Pl.'s Resp. 4). Dr. Katt alleges that he is not only interested in the unresolved claims that are pending but also seeks to recover for those additional insured doctors that are not subject to pending suit or claims who nevertheless are owed defense costs and coverage for unsatisfied judgments entered against them. (Id. at 6). Dr. Katt claims that there are a sufficient number of insured physicians who settled when they heard that Everest and AISLIC were insolvent to complete the class. (Id.) Because there is a factual dispute, which the court must resolve to determine whether it has jurisdiction to hear the case, the court may order at its discretion discovery of facts necessary to ascertain their competency to entertain the merits. Eaton, 692 F.2d at 729.

B. Motion to Change Venue

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. § 1404(a) (2006). The district court may only allow the transfer if the court to which the action is being transferred has jurisdiction over the matter. See id. In order to determine whether a court has jurisdiction over matters allegedly related to a bankruptcy case, the reviewing court must decide whether federal jurisdiction exists in the district court. See In re Galluci, 931 F.2d 738 (11th Cir. 1991).

"[T]he district court shall have original but not exclusive jurisdiction over all civil proceedings related to cases under Title 11." 28 U.S.C. § 1334(b) (2006). "A civil proceeding is related to bankruptcy when the outcome of the proceeding could conceivably have an effect on

the estate being administered in bankruptcy." Lemco, 910 F.2d at 788 (citing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984). An action could have an effect on the estate being administered where the action could alter the debtor's rights, liabilities, options, or freedom of action and where the action impacts the handling and administration of the bankrupt estate. See Id. Each district court may provide that any or all cases related to a case under title 11 shall be referred to the bankruptcy judges for the district. 28 U.S.C. § 157(a) (2006). Therefore the determination of whether the district court has jurisdiction over a bankruptcy case is ultimately the same as the determination of whether a district court should refer the case because the bankruptcy court draws its jurisdiction from the district court. See Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). A proceeding related to a case under Title 11 may be commenced in the district court in which such case is pending. 28 U.S.C. § 1409(a) (2006).

"'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Celotex, 514 U.S. at 308 (quoting Pacor, 743 F.2d at 994). Therefore, "the 'related to' language of 1334(b) must be read to give the district courts (and bankruptcy courts under 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate." Id. However, a bankruptcy court's "related to" jurisdiction cannot be limitless. Id. Where the dispute does not involve identification of debtor's property interest, does not affect other creditors and could not have effect on debtor's estate the bankruptcy court lacks jurisdiction to hear the case. See Lemco, 910 F.2d at 789.

For example, the fact that property was once owned by debtor does not supply federal jurisdiction over all future disputes concerning property. Id. Overlap between debtor's affairs and another dispute is insufficient to confer bankruptcy jurisdiction unless resolution of dispute also affects debtor's estate or allocation of assets among creditors. Id. The mere fact that there may be common issues of fact between civil proceeding and controversy involving bankruptcy estate does not invoke related proceeding jurisdiction of bankruptcy court. Id. Although courts should retain jurisdiction to enforce their orders, when property is sold by the trustee with the approval of the court, the buyer acquires title clear of all claims in bankruptcy. Id. at 788 (dispute between debtor's landlord and purchaser of debtor's assets was not "related to" bankruptcy even though court order governed the dispute).

Here, Sterling includes in their argument that the Bankruptcy court maintained jurisdiction certain matters concerning its orders and determinations in the case, and that in retaining its jurisdiction over these matters, it has the right to hear this case, which involves its orders. (Id.) However, Sterling, in their conclusions, failed to consider Dr. Katt's claim that Sterling misconstrued the Bankruptcy Court's retention of jurisdiction. (Pl.'s Resp. 11.) In making this argument, Dr. Katt sets forth a section in the Bankruptcy Court's Order Adopting Clarifying Procedures For Processing Malpractice Claims Against The Debtor's Insurance Policies, which states that

> nothing contained in this Order or the Clarifying Procedures shall affect, resolve or have any preclusive effect whatsoever upon any other disputes, including without limitation any funding obligation for medical malpractice claims or

> otherwise which Sterling allegedly may have, any alleged liabilities of Sterling, whether Sterling has acted properly in choosing to administer claims against any of the Policies as opposed to another policy, or otherwise, and all of the parties' rights (including Sterling's rights) to such matters are fully reserved. (Clarifying Order 5.)

Thus, even if the Bankruptcy Court's retention of jurisdiction were to have any bearing on whether the Bankruptcy Court has jurisdiction, the Bankruptcy Court clarifies in this passage that it did not intend to interfere with actions regarding Sterling's alleged liabilities. (See Id.) Therefore the Bankruptcy Court must not consider those cases as being "related to" the Bankruptcy case in a way that would allow the Bankruptcy Court to retain jurisdiction. (See id.) After all, a bankruptcy court's "related to" jurisdiction cannot be limitless. Celotex, 514 U.S. at 308.

Furthermore, Sterling seems concerned that the Orders affect the distribution of funds under the insurance policies. (Def.'s Reply 6.) However, Dr. Katt is suing Sterling to determine and enforce Sterling's duties to the class. (Second Am. Compl. 8.) And, even if this law suit were to implicate the insurance companies, the insurance policies were sold to Sterling under the Asset Purchase Agreement along with all of PhyAmerica's liabilities. (See Def.'s Mot. 4.) Therefore, there is seemingly no way in which the outcome of this case could conceivably alter the debtor's rights, liabilities, options, or freedom of action or can impact the handling and administration of the bankrupt estate where the property no longer belongs to or affects the estate. See Lemco, 910 F.2d at 788.

Sterling also emphasizes that a court should retain jurisdiction to enforce its orders.

(Def.'s Reply 7.)  However, Lemco,[2] shows that the mere fact that the court should retain jurisdiction does not outweigh the fact that once a property is sold, it is no longer part of the bankrupt's estate, and it is unlikely that a case concerning the property is within the jurisdiction of the bankruptcy courts.  910 F.2d at 788.

Sterling's final argument that the Bankruptcy Court "has jurisdiction over the Complaint because the outcome could affect the debtor-creditor relations and the liquidation of the estate assets previously approved by the Bankruptcy Court's Order is conclusory, and Sterling does not give any justifications that would lead the Court to this determination.  After all, the company that is being dealt with in this law suit was sold with all liabilities attached.  Therefore, the debtor and the creditors in the bankruptcy action are no longer affected by the sold property.

## Conclusion

Sterling's factual challenge to the number of class members available for this class action suit is insufficient to warrant dismissal for lack of subject matter jurisdiction. Because the court must weigh the evidence to determine whether jurisdiction exists, Barnett, 283 F.3d at 1237-38, the Court shall order discovery, limiting said discovery to the determination of whether subject matter jurisdiction exists.  See Eaton v. Dorchester Dev. Inc., 692 F.2d at 729.

The Bankruptcy Court's Orders dictating the sales terms, claim management and

---

[2] Sterling cites Wesch v. Folsom, 6 F.3d 1465, 1470 (11th Cir. 1993), however, the Wesch case is less akin to this case than the Lemco case because it does not deal with bankruptcy proceedings.

liabilities of Sterling in its acquisition of PhyAmerica's assets is insufficient to confer jurisdiction upon the Bankruptcy Court. Where the dispute does not involve identification of debtor's property interest, does not affect other creditors, and could not have effect on debtor's estate the bankruptcy court lacks jurisdiction to hear the case. See Lemco, 910 F.2d at 789. Because these Orders deal with property that was sold to Sterling, the property is now outside of the hands of the debtor, and therefore out of reach of the Bankruptcy Court's jurisdiction. Accordingly, a change of venue would be inappropriate.

Therefore, it is hereby ORDERED AND ADJUDGED that Defendant Sterling's motion to dismiss or, in the alternative, change venue [DE 13] is DENIED. IT IS FURTHER ORDERED that the parties shall conduct discovery aimed at determining whether this Court has subject matter jurisdiction. This limited discovery shall be completed within ninety (90) days of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of September, 2007.

SHELBY HIGHSMITH
UNITED STATES DISTRICT JUDGE

cc:   Counsel of Record